UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

LASHAWN YOUNG,

      Plaintiff,                 Civil Action No. 15-11028
                                    Honorable Marianne O. Battani
          v.               Magistrate Judge Elizabeth A. Stafford

METROPOLITAN LIFE
INSURANCE COMPANY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR JUDGMENT, AND PLAINTIFF'S PROCEDURAL CHALLENGE AND MOTION TO STAY PROCEEDINGS [R. 20, 27, 29, 30]

## I.   INTRODUCTION

Plaintiff LaShawn Young sues defendant Metropolitan Life Insurance Company ("MetLife") alleging wrongful denial of short-term disability benefits from January 16, 2014 onward. [R. 1, PgID 5; R. 16-6, PgID 439-41]. This dispute is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. [R. 11]. MetLife filed a motion for judgment, [R. 27], and Young subsequently filed his response, which the Court treats as his cross-motion for judgment. [R. 29]. Young also makes procedural challenges and filed a motion to stay proceedings. [R. 20; R. 30].

For the reasons set forth below, the Court **RECOMMENDS** that MetLife's motion for judgment be **GRANTED**, that Young's motions be **DENIED**, and that the decision of the plan administrator be **AFFIRMED**.

## II.   BACKGROUND

Young applied for short-term disability benefits for a period beginning on January 13, 2014, [R. 16-7, PgID 491-93], and MetLife initially denied the claim on January 27, 2014, stating that Young failed to provide required information. [*Id.*, PgID 468]. MetLife later received more information from Young and from his treating physician Pauleena Singh, M.D., and revisited the claim, rendering a second denial letter in March 2014. [R. 16-6, PgID 439-41]. This letter explained the reasons his claim was denied and informed him of the right to appeal the decision "within 180 days after you receive this denial letter" by submitting an appeal letter to MetLife. [*Id.*, PgID 441].

In June 2014, Young submitted an appeal and additional evidence, and MetLife considered that evidence and attempted to contact Dr. Singh in August, to no avail. [R. 16-4, PgID 290-93]. In September, MetLife upheld its denial of benefits to Young and sent him a letter to that effect. [*Id.*]. Young then filed suit in state court for wrongful denial of benefits, which MetLife removed to this Court. [R. 1].

2

Young claims that his short-term disability benefits were wrongfully denied, as he had "documented symptoms of anxiety, stress, heart palpitations, elevated blood pressure, irregular pulse, [and] abnormal EKG." [R. 29, PgID 742]. He also alleges that he was given insufficient time (two weeks) to obtain documentation from a psychiatrist to support his claim, and that MetLife wrongfully solicited an opinion from Varsha Karamchandani, M.D., who Young alleges mistreated him during an initial appointment in March 2014, [R. 16-6, PgID 435], and then denied to a consulting psychiatric reviewer that she had ever seen Young. [R. 16-4, PgID 318].

## III.   ANALYSIS

### a.   *Young's Procedural Challenge and Motion for Stay*

Young filed a procedural challenge in which he alleges that his disability benefits were negligently and wrongfully denied. [R. 20]. He claims that MetLife acted in bad faith and violated his due process rights, and that the administrative record proves these allegations. [*Id.*]. He did not request discovery or move for the admissibility of evidence not contained within the administrative record. [*Id.*].

A successful procedural challenge is an exception to the general rule that "a court reviewing a party's ERISA claim cannot consider evidence

3

outside the Administrative Record." *Likas v. Life Ins. Co. of N. Am.*, 222

Fed. Appx. 481, 485 (6th Cir. 2007). But Young's procedural challenge

alleges that his proofs of MetLife's bad faith denial of benefits are within the

administrative record.  [R. 20, PgID 537].  In other words, Young's

procedural challenge is indistinguishable from his substantive argument,

and should be denied as moot.

Young also alleges that he filed a complaint with the Department of

Justice (DOJ) regarding MetLife's alleged misconduct, and asks the Court

to stay this proceeding pending an investigation.  [R. 30].  While a court

may stay a civil action pending a parallel criminal investigation by the DOJ,

*see, e.g., McGee v. Madison Cty., Tenn.*, No. 1:15-CV-01069, 2015 WL

3648986, at *3 (W.D. Tenn. June 10, 2015), Young has not shown that his

complaint has resulted in an investigation, much less one that is criminal in

nature.  His motion to stay should be denied.

### b. *ERISA Standard of Review*

The Court reviews a denial of benefits by the ERISA plan

administrator *de novo*, "unless the plan grants the administrator

discretionary authority to determine eligibility for benefits." *Deboard v.*

*Liberty Life Assur. Co. of Boston*, No. 2:13-CV-12838, 2014 WL 4064249,

at *5 (E.D. Mich. Aug. 18, 2014). "If the plan gives the administrator

discretionary authority, a court applies the highly deferential arbitrary and capricious standard of review." *Id.* Here, there is a clear and explicit delegation of discretionary authority from the "Plan Administrator" to MetLife. [*See* R. 16-1, PgID 143]. Furthermore, the plan is self-funded, meaning that it is exempt from Michigan laws banning such discretionary clauses.[1] [*Id.*]. *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990). As such, the arbitrary and capricious standard applies.

"Under this deferential standard, when it is possible to offer a reasoned explanation, based on the evidence for a particular outcome, that outcome is not arbitrary or capricious." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). The Court must uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds,* 929 F.2d 1140, 1144 (6th Cir. 1991). This is the case even when there may be sufficient evidence to support a finding of disability, so long as there is a reasonable explanation for the administrator's decision. *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). In an ERISA action, the Court's consideration is generally limited to evidence contained in the

---

[1] *See* Mich. Admin. Code R. 500.2202.

5

administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

### c. *MetLife's Denial of Short-Term Disability Benefits*

#### i. Relevant Provisions of the Plan [R. 16-1, PgID 124-46]

MetLife's short-term disability coverage plan for employees of CSL Plasma, Inc., where Young was employed during the relevant time period, contains the following relevant provisions. The plan defines "disability" as follows:

> You are considered disabled if you are not able – solely because of disease or injury – to perform the **material duties** of your **own occupation**.
>
> You are not considered to be performing the material duties of your **own occupation** if:
>
> • You are performing only some of the material duties of your occupation; and
>
> • Solely because of disease or **injury**, your income is 80% or less of your **predisability earnings**.

[R. 16-1, PgID 128 (emphasis in original)]. The plan defines a "period of disability" as follows:

> A period of disability starts on the first day you are disabled as a direct result of a significant change in your physical or mental condition that occurs while you are covered under this plan. You must be under the regular care of a **physician**. (You will not be considered to be under the regular care of a **physician** more than 31 days before the date he or she has seen and treated you in perform for the disease of **injury** that caused

6

your disability.)

MetLife will certify the length or duration of your period of disability. A period of disability ends on the first to occur of the following:

- The date MetLife finds you are no longer disabled or the date you fail to provide proof of your disability.
- The date you are no longer under the regular care of a **physician**.

[*Id.*, PgID 130 (emphasis in original)]. The plan defines "physician" as

follows:

This is a person who is a legally qualified physician. . . .

To be under the regular care of a physician means that you are attended by a physician:

- Who is not you or related to you;
- Who is practicing within the scope of his or her license;
- Who has the medical training and clinical experience suitable to treat your disabling condition;
- Who specializes in psychiatry if your disability is caused to any extent by a mental health or psychiatric condition….

[*Id.*, PgID 146].

### ii. Denial Reasoning

In issuing its denial, MetLife considered an opinion from Dr. Singh

that Young would need approximately two months of leave, citing anxiety,

rhinosinusitis, and "URI viral." [R. 16-7, PgID 464-66]. It considered

progress notes from Dr. Singh from January 16, 22, and 30, 2014, which

7

indicated that Young was suffering from stress and anxiety due to his work, though he showed good insight and judgment and appropriate speech. [R. 16-5, PgID 358-62]. The notes also stated that Young was dealing with sinus issues and that he was instructed to follow up with a psychiatrist. [*Id.*, PgID 358, 359-60]. Dr. Singh noted that Young's anxiety and stress may have caused heart palpitations, weakness, fatigue, and "almost getting into a panic attack." [R. 16-7, PgID 464-66].

MetLife found that the medical records provided at that time did not "substantiate the presence of a severe psychiatric functional impairment that would be expected to prevent [Young] from performing the duties of [his] job." [R. 16-6, PgID 440]. Specifically, MetLife found that Dr. Singh's file lacked detailed psychiatric symptoms, mental status exam findings, descriptions of Young's inability to perform activities of daily living, a description of severe psychiatric signs or symptoms, or medical documentation from a treating psychiatrist. [*Id.*]. Young was informed of his right to appeal the decision and submit additional evidence within 180 days of receipt of the letter. [*Id.*, PgID 441].

Though he had until at least September 16, 2014 to appeal his denial (based on the date of the March denial letter), Young appealed on June 18, 2014. [R. 16-6, PgID 433]. He complained that MetLife did not consider his

8

abnormal EKG and that he was given an insufficient time to seek a psychiatrist after MetLife's decision in March to uphold its denial.  [*Id.*].  Yet, before filing this appeal, he did not exhaust the full 180 days he had to seek additional psychiatric evidence.  His appeal included no new evidence, except that therapist Beth Kafkakis, M.A./L.L.P., sent a letter on July 7, 2014, opining that Young should be given additional time to find a psychiatrist or psychologist. [R. 16-5, PgID 353].

On September 4, 2014, MetLife upheld its previous decision to deny short-term disability benefits to Young. [R. 16-4, PgID 290-93]. In support, MetLife cited the July 22, 2014 opinion of Dennis S. Gordan, M.D., board certified in physical medicine and internal medicine, who reviewed the file and found that there was no support for a non-psychiatric cause of restrictions after January 13, 2014.  [*Id.*, PgID 322-23; R. 16-5, PgID 325-26]. He spoke to Dr. Singh, who opined that Young's impairments were related to anxiety, and that while Young had had upper respiratory symptoms and ectopic beats, they had been treated and "no long-term problems [were] identified." [R. 16-5, PgID 326].  In its September denial letter, MetLife stated that it had requested additional information from Dr. Singh for its review of Young's appeal, but had not received anything.  [R. 16-4, PgID 292-93].

9

MetLife also relied upon the July 2014 opinion of consultant Marcus Goldman, M.D., a board certified psychiatrist, [R. 16-4, PgID 318-23], who found that the record did not support that Young suffered from functional limitations beyond his last day of work in January, and that the "documentation suggests job conflict and work stress rather than a globally or functionally impairing or limiting mental disorder." [R. 16-4, PgID 320]. He cited the lack of diagnostic mental health assessments, psychiatry or mental health therapy records, detailed serial mental status examinations, evidence of treatment in more intense levels of care, aggressive pharmacotherapy, or documentation of outward psychiatric signs. Dr. Goldman additionally opined that Young had not received appropriate care and treatment.  [*Id.*].

### iii.  Application of the Arbitrary and Capricious Standard

Young's argues that MetLife acted blatantly, willfully and maliciously in denying his claim for benefits, but the record does not support those allegations, nor that MetLife's denial was arbitrary or capricious.

Young complains that he was given only two weeks to find a new psychiatrist after his failed March 2015 meeting with Dr. Karamchandani, and that this was an affront to his right to due process, but this allegation is without factual or legal merit. Factually, Young had until September 2014 to

10

file an appeal with additional medical evidence, but he instead appealed in June and never submitted any additional medical evidence.  [R. 16-6, PgID 433, 440]. The record does not reflect that Young attempted to secure a psychiatrist other than Dr. Karamchandani, and more importantly, the plan required Young to have *already* been under the regular care of a psychiatrist at the onset of any mental disability in order to be eligible for benefits.  [R. 16-1, PgID 130, 146].

In addition, the law did not require MetLife to give Young more time to find a doctor to substantiate his claims; it was required only to fully consider the evidence he provided.  29 C.F.R. § 2560.503-1 (requiring "full and fair review" including consideration of "all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.").  Young does not show that MetLife failed to comply with this regulation.

Young faults MetLife for seeking information from Dr. Karamchandani after his "traumatic" experience with her, [R. 29, PgID 740], but he cites no legal authority that required MetLife to seek information only from the sources he chose.  Regardless, the decision to deny Young benefits was based upon the lack of medical support for his claim of disability; Dr.

11

Karamchandani's alleged mistreatment is of no consequence to that decision.

Ultimately, MetLife's decision was not arbitrary or capricious, as it provided a reasoned explanation of its decision and the decision was supported by substantial evidence. *Cox*, 585 F.3d at 299; *Baker,* 929 F.2d at 1144. Its decision is supported by the lack of medical evidence in the record, which is limited to a few progress notes and normal test results, as well as the conclusions of two independent physician consultants who found that Young's record did not support a finding of disability under the definition in the plan. It is true that treating physician Dr. Singh opined that he required leave from January to March 2014. [R. 16-7, PgID 484-86]. But this decision was based on Young's anxiety, stress, and overall mental health, and under the plan language, Young was required to be under the regular care of a psychiatrist in order to be eligible for benefits for mental health conditions.  [R. 16-1, PgID 130, 146].

Besides, unlike in other administrative schemes, there is no "special deference" accorded to a claimant's treating physician in ERISA claims. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). MetLife was entitled to rely upon other physicians "so long as the administrator does not totally ignore the treating physician's opinions." *Balmert v.*

12

*Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010). Dr.

Singh's opinion was not ignored; it was referenced in the opinions of Dr.

Goldman and Dr. Gordan, as well as every denial letter from MetLife.

MetLife also invited Dr. Singh to further discuss her opinion, send additional

clinical evidence in support of her conclusions and rebut the findings of the

physician consultants, but she did not respond. [R. 16-4, PgID 292-93].

### iv.  Attorney's Fees

Without any analysis, MetLife requests attorney's fees.  [R. 27, PgID

590]. This unsupported request should be denied.  The following factors

are considered when deciding whether to award attorneys' fees under 29

U.S.C. § 1132(g)(1):

> (1) the degree of the opposing party's culpability or bad faith;
> (2) the opposing party's ability to satisfy an award of attorney's
> fees; (3) the deterrent effect of an award on other persons
> under similar circumstances; (4) whether the party requesting
> fees sought to confer a common benefit on all participants and
> beneficiaries of an ERISA plan or resolve significant legal
> questions regarding ERISA; and (5) the relative merits of the
> parties' positions.

*Schwartz v. Gregori*, 160 F.3d 1116, 1118 (6th Cir. 1998). Here, the Court

finds that Young has exhibited no bad faith (he believed his claims to be

valid), and no evidence demonstrates that Young could satisfy such an

award given his unemployment. Awarding MetLife attorney fees will not to

deter another claimant who has faith in his or her claims, and MetLife has

13

not claimed a common benefit or resolution of significant legal questions.

Finally, while Young's claim is without merit, medical documentation in the

record provided some support for his claims of stress and anxiety, and his

treating physician rendered an opinion that he could not work for a period.

Under these circumstances, MetLife is not entitled to attorney fees.

## IV.   CONCLUSION

For the preceding reasons, the Court **RECOMMENDS** that MetLife's

motion for judgment **[R. 27]** be **GRANTED**, that Young's procedural

challenge, motion for judgment and motion for stay **[R. 20, 29, 30]** be

**DENIED**, and that the decision of the plan administrator be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 5, 2016

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

14

fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2016.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

15